Filed 12/18/25 Certified for Publication 1/16/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIANS FOR HOMEOWNERSHIP, INC., <br><br> Petitioner and Appellant, <br><br> v. <br><br> CITY OF LA HABRA, <br><br> Respondent. | G064286 <br><br> (Super. Ct. No. 30-2023-01325471) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Donald F. Gaffney, Judge. Affirmed. Appellant's request for judicial notice granted; Respondent's request for judicial notice denied.

Matthew P. Gelfand and Allyson H. Richman for Petitioner and Appellant.

Richards, Watson & Gershon, Ginetta L. Giovinco and Sose Tezyan for Respondent.

Horvitz & Levy, Mark A. Kressel and Benjamin P. Covington, Hanson Bridgett, Robin R. Baral and Niran S. Somasundaram as Amici Curiae Yimby Law, California Housing Defense Fund, California Building Industry Association, and Building Industry Association of the Bay Area on behalf of Appellant.

*        *        *

Californians for Homeownership, Inc. appeals from a judgment denying its petition for writ of mandate challenging the February 2023 revision of the City of La Habra's housing element. It contends the February 2023 version is invalid because (1) the City Council and planning commission did not hold public hearings on that particular version and (2) the version was adopted not by the City Council, but rather by the City Manager. We conclude the trial court correctly rejected these arguments and affirm.

FACTS

I.

LEGAL BACKGROUND: THE HOUSING ELEMENT LAW

A city's general plan includes a housing element that analyzes existing and projected housing needs and discusses housing goals, policies, and programs. (Gov. Code[1], §§ 65300, 65302, subd. (c), 65583.) The housing element must be reviewed and revised pursuant to a statutory timetable, generally every eight years. (See § 65588, subd. (a), (b), (e)(3)(A)(i).)

During that revision process, the Department of Housing and Community Development reviews the housing element and issues findings on whether it substantially complies with state law. (§ 65585, subd. (d), (h);

---

[1] All further undesignated statutory references are to this code.

Health & Safety Code, § 50459, subd. (b).) Multiple drafts may be required in order to secure Department certification. (See § 65585, subd. (b), (d), (f), (h).)

Section 65585 describes the various steps for the revision and certification process.[2] No model of clarity, the statute references first draft revisions, subsequent draft revisions, adopted revisions (sometimes called adopted elements), draft amendments, subsequent draft amendments, and adopted amendments. The term "revision" plainly refers to the periodic update of a housing element that occurs every eight years. (See § 65588, subd. (e) [setting schedule for jurisdictions to "revise" their housing elements]; § 65585, subd. (b)(1) [referencing "revision" of housing element that occurs under § 65588, subd. (e)].) Read in context, the term "amendment" appears to refer to changes to an adopted revision.

At the beginning of each periodic revision process, the local government makes the first draft revision of its housing element available for public comment for 30 days. (§ 65585, subd. (b)(1)(A).) The planning agency staff collects and compiles those comments for the legislative body, and the local government then takes 10 business days to consider and incorporate those comments into the draft revision. (*Id.*, subd. (b)(1)(A) & (b)(1)(B).)

Next, the planning agency submits the draft revision to the Department for review. (§ 65585, subd. (b)(1)(A) & (b)(1)(C).) The Department then has 90 days to issue written findings on whether the draft substantially complies with state law. (*Id.*, subd. (b)(1)(C) & (d).)

If the Department finds the draft element is not substantially compliant, the legislative body has two options. (§ 65585, subd. (f).) It may

_____

[2] Section 65585 has been amended several times since 2022. We use the current numbering of the statute's subdivisions.

3

change the draft element to substantially comply with state law and then follow the procedures outlined in subdivision (b) for subsequent draft revisions—i.e., post the draft revision on its website, e-mail a link to all interested parties, and submit it to the Department for further review. (*Id.*, subd. (b)(1)(A), (d), (f)(1).) Alternatively, the legislative body may adopt the draft element without changes, make formal written findings rebutting the Department's concerns, and promptly submit the adopted element to the Department, which will then determine whether it substantially complies with state law. (*Id.*, subd. (f)(2), (g)(1), (h).)

Before the housing element is adopted, the city's legislative body must hold at least one public hearing. (§ 65355; see also §§ 65351, 65353, subd. (a).) Adoption of a housing element also requires a resolution of a majority of the legislative body's total membership. (§ 65356, subd. (a).)

If the Department finds an adopted element does not substantially comply with state law, the planning agency may submit a subsequent draft amendment to the Department for review. (See § 65585, subd. (b)(1)(A), (b)(1)(C), (d), (f) [referencing Department review of draft amendments].) If the Department finds that draft amendment is still not substantially compliant, the legislative body has the same two options as above: revise again, post the subsequent draft online, e-mail it to interested parties, and submit it to the Department (*id.*, subd. (b)(1)(A), (b)(1)(C), (f)(1)); or adopt the draft amendment as is, make findings rebutting the Department's concerns, and submit the adopted amendment and findings to the Department for review (*id.*, subd. (f)(2), (g)(1), (h)).

Once the Department has certified a housing element as substantially complying with state law, it enjoys a rebuttable presumption of validity. The burden of proof shifts to any party challenging the housing

4

element to demonstrate that the presumption is incorrect. (§ 65589.3, subd. (a); *New Commune DTLA LLC v. City of Redondo Beach* (2025) 115 Cal.App.5th 111, 128.)

## II.

### THE CITY'S SIXTH CYCLE REVISION

The statutory deadline for the City of La Habra's "sixth cycle" revision of its housing element was in October 2021. In anticipation, the City's general plan advisory committee held a series of public meetings about housing element-related issues, and the City's planning commission and City Council each held a public hearing in summer 2021 to review the draft housing element. The City then sent the draft to the Department, which found various changes were needed to comply with state law.

The City modified the draft housing element accordingly, held a public hearing, and sent the new draft to the Department for further review. In response, the Department asked the City for additional information about its housing needs, resources, and programs. City staff worked with the Department on further changes over the next several months, and the City's planning commission recommended that the City Council approve the revised draft.

In September 2022, the City Council held another public hearing on the draft housing element. At the conclusion of the hearing, the City Council adopted the housing element via Resolution No. 6085 and directed the City Manager to submit it to the Department for review. Resolution No. 6085 also gave the City Manager the power to make further "technical or clerical revisions to the Housing Element as may be necessary to obtain a finding of substantial compliance from [the Department]."

The City submitted the adopted housing element to the Department the next day. The Department notified the City that further revisions, outlined in a five-page appendix, would be required to substantially comply with state law.

Over the next several months, City staff met with Department personnel twice and made additional changes to the housing element. According to the City, those changes "were very minor and technical in nature" and mostly "involved simply adding background/context data, clarifying and refining programs, and making revisions to be consistent with [the Department's] most recent guidance from December 2022 and address laws that would be going into effect on January 1, 2023." According to CFH, however, the changes were far from minor and included significant modifications to the housing element's sites inventory. In any event, at the Department's suggestion, the City posted the revised housing element to its website and sent a link to the webpage to interested parties.

In February 2023, the City Manager approved the "technical and clerical revisions to the adopted 2021–2029 Housing Element" under the authority delegated to him by Resolution No. 6085. He forwarded the housing element to the Department for review and certification.

The Department determined the housing element that the City Council adopted by Resolution 6085 in September 2022, with the modifications approved by the City Manager in February 2023, substantially complied with state law. It did not assess the propriety of notice and hearing procedures.

As best we can tell, the City Council never formally adopted the February 2023 modifications. However, it subsequently took steps to implement programs referenced in the final version of the housing element.

6

This litigation followed. CFH, a nonprofit organization that aims to address California's housing crisis, filed a petition for writ of mandate prohibiting the City from treating the February 2023 version of its housing element as validly adopted. According to CFH, an amendment to a city's housing element may only be made by its "legislative body" (in this case, City Council) following a public hearing. (See § 65356, subd. (a).) CFH alleged the February 2023 version of the housing element was improperly adopted by unelected city staff (the City Manager) without a public hearing.

The trial court denied the petition. It found the City had satisfied the public participation requirement by holding public hearings on earlier drafts of the housing element and by posting the February 2023 version on its website. It also found the City Council validly delegated the amendment process to its staff through Resolution No. 6085. Finally, the court found that even if the City's process violated state law, CFH's petition was barred by the harmless error rule in section 65010, subdivision (b).

DISCUSSION

CFH contends the City's February 2023 version of the housing element is invalid because (1) the City Council and planning commission held no public hearings to consider the February 2023 modifications, and (2) those modifications were not adopted by the City Council, but rather were approved by the unelected City Manager.

We independently review whether a housing element substantially complies with the applicable statutory requirements. (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 237.) We cannot invalidate or set aside a housing element based on a hearing or procedural error unless the error was prejudicial, the complaining party suffered substantial injury as a result, and a different result is probable if the error had not occurred. (§

7

65010, subd. (b); *Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 919 (*Rialto Citizens*).)

First we consider the public hearing issue. CFH concedes the City satisfied the public hearing requirement for the September 2022 version of its housing element, and rightly so. The City Council and planning commission held multiple public hearings to consider various drafts before the City Council adopted the housing element in September 2022.

CFH maintains additional public hearings were required to consider the February 2023 modifications. In support, it cites two code sections from Article 6, which governs the preparation, adoption, and amendment of general plans: section 65355 ("Prior to adopting or amending a general plan, the legislative body shall hold at least one public hearing"), and section 65353 (the authorized planning commission, if any, "shall hold at least one public hearing before approving a recommendation on the adoption or amendment of a general plan").

We are not convinced these provisions mandated additional public hearings here. For that to be true, the February 2023 modifications would need to constitute an entirely new "amendment" to the City's housing element (as that term is used in Article 6), separate and distinct from the City's sixth cycle housing element revision. That is not what happened here. As we see it, the February 2023 modifications were the penultimate step in the larger process of creating and obtaining certification of the City's sixth cycle revision of its housing element; indeed, those modifications were made at the Department's instruction and for the express purpose of obtaining certification of substantial compliance for the sixth cycle. Because the modifications were not a new and distinct "amendment" to the housing

8

element (as that term is used in Article 6), there was no need for additional hearings under sections 65355 or 65353.

Our conclusion is bolstered by the language of Article 10.6 on housing elements, and more specifically the code section on revising housing elements, section 65585. That statute creates a lengthy, multi-step process for revising and obtaining Department certification of a housing element revision. It specifically contemplates that the Department may reject an *adopted* housing element and require further "amendment" and resubmission before compliance is certified. (See *id.*, subd. (b)(1)(C) & (h) [discussing Department review of an "adopted revision" and of "adopted housing elements"].) This suggests that post-adoption "amendments" are part of a larger revision and certification process and not a new amendment subject to additional Article 6's public hearing requirements.

Section 65585 also includes specific requirements for public engagement: it requires public comments to the very "first draft revision" (*id.*, subd. (b)(1)(A) & (b)(1)(B)), as well as the online posting of any "subsequent draft revision[s]" (*id.*, subd. (b)(1)(A); see (f)(1)(B)[3]). However, it does not

_____

[3] CFH and amici curiae wrongly assert the City also should have provided an additional public comment period on the 2023 modifications. Section 65585 was amended postjudgment to provide that if a city changes a draft element or draft amendment in response to a Department finding of noncompliance, the change "shall be completed in accordance with subdivision (b)." (See Aseem. Bill No. 2023 (Stats. 2024, ch. 269, § 4); § 65585, subd. (f)(1)(B).) Subdivision (b) in turn provides that for "any subsequent draft revision," the local government must post the draft on its website and e-mail a link to interested parties. Although subdivision (b) elsewhere references a 30-day public comment period, that requirement only applies to "the first draft revision" of the housing element, not to any "subsequent draft revision." (*Id.*, subd. (b)(1)(A).)

9

require a public hearing when a city amends an adopted housing element in order to obtain Department certification.

If the Legislature had intended to include an additional public hearing requirement toward the end of the certification process whenever post-adoption amendments are needed to secure Department certification, it would have said so. It has not, and there appears to be a good explanation for this. As the City observes, if any post-adoption change to a housing element, no matter how small, required the housing element revision process to restart, the result would be "a never-ending loop," which would defeat the purpose of having a short, eight-year cycle for revising housing elements and would frustrate the development of additional housing.

Next we consider whether the housing element, as modified in February 2023, was properly adopted by the City's legislative body. According to CFH, adoption or amendment of a housing element requires a resolution of a majority of the total membership of the legislative body (in this case, the City Council) (§ 65356, subd. (a)), but the February 2023 modifications were instead approved by the unelected City Manager.

Again, we see no violation. The City Council adopted the housing element in September 2022. They then gave the City Manager the express authority through Resolution No. 6085 to make further technical or clerical revisions as needed to obtain a finding of substantial compliance from the Department. This is a valid delegation of authority under La Habra Municipal Code section 2.16.200, which provides that it "shall be the duty of the city manager to perform such other duties and exercise such other powers as may be delegated to him from time to time by ordinance or resolution or other official action of the city council." (Accord, *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 788 ["the planning law is intended to grant a large

10

degree of legislative discretion to local jurisdictions in the general plan amendment process"].)

CFH insists the February 2023 modifications were substantial and far exceeded the scope of that delegation. But the City Council at no point expressed any such concern. On the contrary, the City Council has implemented various programs required by the housing element, evidently ratifying the modifications.

In any event, even if additional public hearings or comment period were required or if the February 2023 modifications were not correctly adopted, the housing element is presumed valid in light of the Department's April 2023 certification. (See § 65589.3, subd. (a) [creating rebuttable presumption upon certification].)

Finally, CFH has not shown any prejudice, substantial harm, or that a different outcome would have occurred. (§ 65010, subd. (b); *Rialto Citizens, supra,* 208 Cal.App.4th at p. 919.) The modifications in question were specifically requested by the Department in order to achieve certification, so we have no basis to believe an additional public hearing would have altered the outcome. (Cf. *Roberson v. City of Rialto* (2014) 226 Cal.App.4th 1499, 1507 [no prejudice from lack of hearing because petitioner did not show what comments would have been made].) And the City Council clearly approves of the final version of the housing element, as reflected by its adoption of ordinances to implement its programs. We cannot see how the lack of formal City Council adoption has caused substantial harm.[4]

_____

[4] CFH asserts that harmless error analysis applies only to minor technical deviations. But the statute expressly extends its harmless error provision to "any matter pertaining to . . . hearings . . . or any matters of procedure." (§ 65010.)

## DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIANS FOR HOMEOWNERSHIP, INC., <br><br> Petitioner and Appellant, <br><br> v. <br><br> CITY OF LA HABRA, <br><br> Respondent. | G064286 <br><br> (Super. Ct. No. 30-2023-01325471) <br><br> ORDER GRANTING REQUEST FOR PUBLICATION |

The City of Pasadena and the California State Association of Counties have requested that our opinion filed December 18, 2025, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

SCOTT, J.

WE CONCUR:

MOORE, ACTING P. J.

DELANEY, J.